UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-81044-Civ-Marra/Hopkins

BERNADETTE M. HELMUTH, on behalf )
of herself and all others similarly situated, )
                                                          )
          Plaintiff, )
                                                           )
      v. )
                                                           )
ARS NATIONAL SERVICES, INC., )
                                                           )
          Defendant. )
_____ )

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant ARS National Services, Inc. ("ARS"), by its undersigned counsel, for its Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. 94), states as follows:[1]

**FACTS**

Plaintiff financed a new computer system through Dell Financial Services and then failed to pay, leaving behind an unpaid balance of over $2300. Eventually, Dell placed the account for collection with ARS, a collection agency located in Escondido, California. (Montenaro Decl., para. 2.) On April 1, 2010, ARS sent plaintiff an initial demand letter wherein, among other things, ARS clearly identified itself as a debt collector ("**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**").[2] (Montenaro Decl., para. 3

---

[1] The Helmuth Deposition, the Montenaro Declaration, and the Montenaro Deposition referenced herein are attached as Exhibits A, B and C, respectively, to Defendant's Response to Plaintiff's Statement of Material Facts.

[2] This disclosure, referred to as the "mini-Miranda," is required in the debt collector's initial communication (whether written or oral) with the debtor. *See* 15 U.S.C.§1692e(11). Subsequent

and Exhibit 2 thereto.)  ARS thereafter made several attempts to contact plaintiff by telephone over the next several months, without success, leaving several messages in the process. (Montenaro Decl., para. 4.)  ARS discontinued collection efforts in March 2011, after Dell recalled the account.  (Montenaro Decl., para. 5.)  At no time did plaintiff ever dispute the debt with Dell or with ARS (Montenaro Decl., para. 7); rather, she simply stopped making payments.[3]

Plaintiff then filed this putative class action lawsuit, alleging that ARS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, when it allegedly left the following pre-recorded telephone message on September 15, 2010:[4]

> Hello.  This is a message from ARS National Services.  It is very important that we speak to Bernadette Helmuth.  This is not a telemarketing or sales call.  Please have them call us toll-free at 1-866-274-3582 and the reference number is 19718288.  We need to be able to discuss this matter with you as soon as possible. Thank you.  Goodbye.

(Dkt. 4, First Amended Class Action Complaint, para. 10.)

According to plaintiff, this alleged message violated the FDCPA's prohibition on "the placement of telephone calls without meaningful disclosure of the caller's identity" as well as a corollary prohibition on failing to disclose "that the communication is from a debt collector." *See* 15 U.S.C. §§1692d, e(11).  Plaintiff makes this claim even though the alleged message

---

communications, such as the alleged telephone message at issue here, need only disclose that "the communication is from a debt collector."  *Id.*

[3] Plaintiff testified that she financed the purchase of a computer through Dell Financial Services, made some initial payments, and then refused to pay any further.  Plaintiff excused her decision to discontinue paying by claiming that the computer "stopped working" shortly after the warranty expired, but admits that she did not speak to Dell about it or seek to repair the computer. She also claimed that her finances prevented her from making further payments or seeking to repair the computer, but this did not prevent her from buying a new computer. (Helmuth Dep., 22:10-23:23; 24:9-15; 26:4-6; 26:15-18; 30:5-18; 35:4-36:11.)

[4] ARS has no record of making a call to or leaving a message for plaintiff on September 15, 2010.  (Montenaro Decl., para. 5.)

2

clearly identifies ARS as the caller, states that it this "not a telemarketing or sales call," and followed upon the earlier letter wherein ARS identified itself as a debt collector.  Moreover, ARS had left or attempted to leave messages for plaintiff on 18 different occasions *prior* to the alleged September 15, 2010 message at issue here, including several occasions where she hung up on ARS. (Montenaro Decl., para. 4.)  ARS was no stranger to plaintiff.  Interestingly, plaintiff ignored ARS for months, but on September 13, 2011, six months after ARS had discontinued further collection efforts, nearly a year after the allegedly offending message, and only two days before she filed this lawsuit, plaintiff called ARS out of the blue, claiming that her husband had given her a message to call. She was referred back to Dell. (Montenaro Decl., paras. 5-6.)

Finally, plaintiff's own testimony confirms that she understood the message to be from a debt collector – she testified that after listening to the September 15, 2010 message, she asked her friend "Buzz" for an attorney reference, because she was "getting phone messages from [a] collection agent" and "had someone calling me about a debt." (Helmuth Dep., 45:7-49:21; 51:20-52:2.)  Buzz referred her to Atty. Yarbrough. (*Id*.)  Plaintiff later tried to backpedal on this sequence of events, suggesting that her conversation with "Buzz" did not occur until after she talked to ARS (and that she did not understand ARS to be a debt collector until that time), but her call to ARS took place on September 13, 20<u>11</u>, nearly a year *after* the alleged September 15, 2010 message (and only two days before she filed this class action lawsuit). (Helmuth Dep., 60:19-63:1; 65:24-68:11; *see also* Montenaro Decl., para. 6.)  Her shifting and inconsistent testimony in this regard is alone reason enough to deny summary judgment. There is no doubt an issue of fact whether ARS's communications served to inform plaintiff that ARS was a debt collector.

Plaintiff does not claim that she has actually been harmed or that she is entitled to actual damages; rather, she asks this Court to impose liability on ARS and award her statutory damages, attorneys' fees and costs, solely because the alleged message did not use the actual words "debt" or "debt collector." Section 1692e(11) does not require such a rigidly formulaic message, however. Whether or not the alleged September 15, 2010 message adequately disclosed that ARS was a debt collector, under the totality of the circumstances presented here, is a factual question best left for the jury and, therefore, plaintiff's motion should be denied.

## ARGUMENT

### I.     Plaintiff's Motion Must Be Deferred Until After a Ruling on Class Certification

Plaintiff filed her motion for class certification on November 27, 2012 (Dkt. 86) and, shortly thereafter, filed her motion for partial summary judgment. The motions are being briefed simultaneously (Dkt. 99), but the general rule (often referred to as the "one-way intervention" rule) is that summary judgment motions should be deferred until after the court rules on class certification and, if a class is certified, until after the class members have been given the opportunity to opt-out of the case. Fed. R. Civ P. 23(c)(2)(B) and 23(c)(3)(B) (prohibiting one-way intervention); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("Rule 23(c)(2)'s requirement that, in opt-out class actions, notice be given to all class members as soon as practicable was intended by Congress to prevent one-way intervention.") The purpose of the rule is to avoid merits rulings before the class members are required to commit to the case (and thus be bound by the court's rulings) or opt-out (in which case they would not). *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252-1253 (11th Cir. Fla. 2003) (*citing Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547, 94 S. Ct. 756, 763, 38 L. Ed. 2d 713 (1974)). Otherwise,

class members could avoid an adverse ruling by simply opting out of the case and pursuing the same claim elsewhere without the constraints of *res judicata*. *Id.*

As such, ARS respectfully requests that the court defer its ruling on the motion for partial summary judgment until after the court rules on class certification and, further, if a class is certified, until after class notice has been provided and the opt-out period has expired.

## II.     The Alleged Message is Inadmissible

The evidentiary burden on summary judgment is no different than at trial. Fed. R. Civ. P. 56(c)(4) (to support of a motion for summary judgment, affidavits or declarations must be "made on personal knowledge [and] set out facts that would be admissible in evidence."). Plaintiff may only rely upon admissible evidence, for which a proper foundation has been laid. *See Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783-84 (11th Cir. 2004) ("[i]nadmissible hearsay generally cannot be considered on a motion for summary judgment"); *Streeter v. City of Pensacola*, No. 11-14195, 2012 U.S. App. LEXIS 25449, at *3 (11th Cir. Fla. Dec. 13, 2012) ("In analyzing the evidence presented by the parties, the general rule is that hearsay cannot be considered on a motion for summary judgment unless such statements can be reduced to admissible evidence at trial."). To be admissible, such evidence must be authenticated. *Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. 110, 113 (11th Cir. 2010). Evidence that is not property authenticated is not considered by the court. *Id.* (finding that the district court did not abuse its discretion by striking exhibits that were not properly authenticated).

In order to authenticate evidence, the plaintiff "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. Specifically, in order to authenticate a recording, including a voicemail, the plaintiff must generally show that (1) the recording device was capable of recording the conversation; (2) the

5

operator was competent to operate the machine; (3) the recording is a correct rendition of the occurrence; (4) no changes, additions or deletions have been made; (5) the recording has been preserved in a manner shown to the court; (6) the speakers are identified; and (7) there was no impermissible inducement. *United States v. Branch*, 970 F.2d 1368 (4th Cir. 1992) (articulating factors that provide guidance to the district court when called upon to make rulings on authentication of recordings).

Here, plaintiff's entire case rests upon an unauthenticated and, thus, inadmissible voicemail message allegedly left by ARS. While she claims to be in possession of a recording, she has never produced it, neither to ARS nor in support of her summary judgment motion. Instead, she proffers a mere declaration, in which she recites what she claims to be the message that she received from ARS "on or about September 15, 2010." (Dkt. 97, Declaration of Bernadette Helmuth, para. 4.)[5] That declaration is inadmissible hearsay and must be disregarded. *Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. at 113. As a result, plaintiff's claim fails and her motion for summary judgment must be denied. *See Nicholas v. Nationwide Credit, Inc.*, No. 09-60736, 2010 U.S. Dist. LEXIS 10442, at *9 (S.D. Fla. Feb. 8, 2010) (denying summary judgment where there was "a genuine issue over the authenticity and substance of the audio recordings.")

### III.   The Alleged Message Does Not Violate the FDCPA

Even if the court were to consider the alleged message on the merits, plaintiff's motion must be denied. Section 1692d prohibits "the placement of telephone calls without meaningful

---

[5] Plaintiff's inability to state the exact date and time of the alleged message further undermines her effort to authenticate it. Plaintiff has no independent recollection of when she received the alleged message, nor any independent recollection of what it said other than "There was some important message for Bernadette Helmuth and to contact a number." (Helmuth Dep., 37:3-12; 41:19-23.) Moreover, ARS' records do not reflect any call to or message left for plaintiff on September 15, 2010. (Montenaro Decl., para. 5.)

6

disclosure of the caller's identity." 15 U.S.C. §1692d. Section 1692e(11) likewise prohibits "the failure to disclose . . . that the communication is from a debt collector." 15 U.S.C. §1692e(11). Neither of these sections proscribe exactly how the debt collector is to make those disclosures, nor does either section require, as plaintiff would have it, that the debt collector use some magic phrase or combination of words. Rather, the court should consider all of the circumstances to determine whether the hypothetical "least sophisticated" consumer would understand the message to be from a debt collector. In that regard, the court may assume that even the least sophisticated consumer will "possess a rudimentary amount of information about the world" and will not make "unreasonable misinterpretations." *Rivera v. Amalgamated Debt Collection Servs.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) (quotations omitted).

In this case, ARS clearly and truthfully identified itself *by name* in the message. That is all that is required by Section 1692d, which provides that debt collectors must make a "meaningful disclosure of the caller's *identity*." (Emphasis added.) As such, plaintiff's motion for summary judgment on the Section 1692d claim must be denied.

Likewise, plaintiff is not entitled to summary judgment on her Section 1692e(11) claim. According to plaintiff, the message needs to include the words "debt" or "debt collector," but Section 1692e(11) does not require such a rigidly formulaic message. *Reed v. Global Acceptance Credit Co.,* No. 08-01826, 2008 U.S. Dist. LEXIS 61738, *8-9 (N.D. Cal. 2008) (finding material issue of fact about whether follow-up voicemail messages adequately disclosed that they were from a debt collector); *Epps v. Etan Industries, Inc.,* No. 97-8770, 1998 U.S. Dist. LEXIS 19120, at *28 (N.D. Ill. 1998) (overall content of letter was sufficient to show that it was from a debt collector); *Ross v. Commercial Fin. Servs., Inc.,* 31 F.Supp.2d 1077, 1079-80 (N.D. Ill.1999) (same).

In *Reed*, the court denied summary judgment for the plaintiff on his Section 1692e(11) claim, finding that there was a material issue of fact as to whether the defendant had adequately disclosed that it was a debt collector. *Reed*, 2008 U.S. Dist. LEXIS 61738, at *8-9. There, the defendants sent collection letters to plaintiff and later left several voicemail messages. Reed alleged that the defendants failed to disclose in the messages that the communications were from a debt collector in violation of Section 1692e(11). However, in the voicemails, defendants identified themselves immediately and truthfully as Global Acceptance Credit Company. The court found that "given the totality of the circumstances, it is very possible that even the least sophisticated consumer would have known that Global Acceptance Credit Company was a debt collector. Not only does the defendants' company name suggest that it could be a debt collector, but *the totality of the circumstances and prior communications between the parties suggest that a consumer would know the nature and identity of the caller in the voice mail messages*." *Reed*, 2008 U.S. Dist. LEXIS 61738, at *12 (emphasis added). *See also Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp.2d 1335, 1340-1341 (M.D. Fla. 2011) (finding that "a 'least sophisticated consumer' could determine that the name "Gulf Coast Collection Bureau," in the context of the message as a whole, is sufficient to inform the recipient that the caller is a debt collector"); *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 669-70 (S.D.N.Y. 2006) (noting that that a debt collector could satisfy Section 1692e(11) without the verbatim use of the term "debt collector").

In this case, prior to receiving the alleged message, plaintiff received a letter from ARS in which ARS clearly identified itself as a "debt collector." **("THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.")** (Montenaro Decl., para. 3.)

In the message that followed, ARS identified itself by the same name that it used in the collection letter. As such, it is likely that even the "least sophisticated" consumer would, under the totality of the circumstances, understand that the "ARS" leaving the message was the same "ARS" that sent the earlier debt collection letter. The message goes on to advise that "This is not a telemarketing or sales call" which further serves to dispel any confusion.

Moreover, between the time of the initial April 1, 2010 collection letter and the alleged September 15, 2010 telephone message, ARS had left or attempted to leave messages for plaintiff on 18 different occasions, including several instances where plaintiff hung up on ARS.[6] ARS was no stranger to plaintiff. Interestingly, plaintiff ignored ARS for months, but on September 13, 2011, six months after ARS had discontinued collection efforts, nearly a year after the allegedly offending message, and only two days before she filed this lawsuit, plaintiff called ARS out of the blue, claiming that her husband had given her a message to call. She was referred back to Dell. (Montenaro Decl., paras. 5-6.)

Finally, plaintiff's own testimony confirms that she understood the message to be from a debt collector – she testified that after listening to the September 15, 2010 message, she asked her friend "Buzz" for an attorney reference, because she was "getting phone messages from [a] collection agent" and "had someone calling me about a debt." (Helmuth Dep., 45:7-49:21; 51:20-52:2.) Buzz referred her to Atty. Yarbrough. (*Id.*) Plaintiff later tried to backpedal on this sequence of events, suggesting that her conversation with "Buzz" did not occur until after she talked to ARS (and that she did not understand ARS to be a debt collector until that time), but her call to ARS took place on September 13, 20<u>11</u>, nearly a year *after* the alleged September 15, 2010 message (and only two days before she filed this class action lawsuit). (Helmuth Dep.,

---

[6] None of these earlier messages or call attempts are actionable as they all fall outside of the FDCPA's one-year statute of limitations. 15 U.S.C. §1692k(d).

9

60:19-63:1; 65:24-68:11; *see also* Montenaro Decl., para. 6.)  Her shifting and inconsistent testimony in this regard is alone reason enough to deny summary judgment.

After all this, it is just not credible for plaintiff to claim that she did not recognize ARS as a debt collector in the alleged September 15, 2010 message.  Nor would it be fair to say that the hypothetical "least sophisticated" consumer would, under the totality of these circumstances, fail to recognize ARS as a debt collector. Surely it is not too much to ask that the consumer be expected to keep track of her affairs, especially when it comes to unpaid debts.

Plaintiff makes no mention, of course, of the tightrope that debt collectors have to walk in complying with Section 1692e(11) while, at the same time, avoiding a potential "third-party disclosure" violation under Section 1692c(b) which (with a few exceptions) prohibits a debt collector from communicating with third-parties regarding the debt.  A debt collector can never know for certain who, besides the intended recipient, might listen to the message, *e.g*., a housemate, a child, a friend, etc., which could result in a Section 1692c(b) violation if the message is too explicit.  In this case, however, a third-party who listened to the message without the benefit of having received the earlier debt collection letter would have no basis to think that the message involved debt collection.  Only the actual debtor, who *had* received the letter, would make that connection.  The message thus serves the purposes of both Section 1692e(11) and Section 1692c(b).

Plaintiff relies upon *Drossin v. National Action Financial Services, Inc.*, 641 F.Supp.2d 1314 (S.D. Fla. 2009), but that case is distinguishable. There, the messages at issue were intended for a different person with the same last name and were instead left for the plaintiff by mistake.  As such, it is not clear whether the plaintiff in *Drossin*, who was not the intended recipient of the messages, would have received, as plaintiff did here, an earlier letter identifying

the defendant as a debt collector or the multiple previous phone contacts. Another case relied upon by plaintiff, *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1351 (11th Cir. 2009), is likewise distinguishable because the defendant there purposefully left out of the messages any disclosure of its name.

In sum, whether the message adequately disclosed that ARS was a debt collector is a factual question best left for the jury. Therefore, plaintiff's motion should be denied.

**IV.     The Alleged Message is Not a Communication under the FDCPA**

Pursuant to §1692e(11), a debt collector only has the obligation to disclose that it is a debt collector in a "communication" with the consumer. Under the FDCPA, a "'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2). Courts generally consider voicemail messages from debt collectors to be "communications," even if the messages do not state what the calls are regarding. *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1327 (S.D. Fla. 2009). However, when the message contains no information about the debt, it is not a "communication" under the FDCPA. *Zortman v. J.C. Christensen & Assocs.*, 870 F. Supp. 2d 694, at *33 (D. Minn. 2012) (finding that the voicemail was not a communication under the FDCPA because the message conveyed no more information than a hang-up call); *Biggs v. Credit Collections, Inc.*, No. 07-0053-F, 2007 U.S. Dist. LEXIS 84793, at *13 (W.D. Okla. Nov. 15, 2007) (a message is not a communication under the FDCPA where the message did not convey any information regarding a debt.)

Here, the content of the alleged message is not a communication under the FDCPA: it simply identifies the name of the defendant and a return phone number, which is the same information that would be available in a reverse telephone directory or internet sources. *See*

*Zortman*, 870 F. Supp. 2d 694, at *33 (self-identification and phone number left in voicemail not a communication under the FDCPA).

## CONCLUSION

WHEREFORE, for the reasons set forth above, ARS respectfully requests that the Court deny plaintiff's Motion for Partial Summary Judgment, and enter such further relief as the Court deems just, necessary and proper.

Dated: January 7, 2013

>  */s/ Nancy A. Beyer Benton*
> Nancy A. Beyer Benton (FL Bar No. 0059688)
> nbeyer@mcguirewoods.com
> McGUIREWOODS LLP
> 50 North Laura Street, Ste. 3300
> Jacksonville, FL 32202
> (904) 798-3200
> (904) 798-3207 (fax)
>
> David L. Hartsell (admitted *pro hac vice*)
> dhartsell@mcguirewoods.com
> McGUIREWOODS LLP
> 77 West Wacker Dr., Ste. 4100
> Chicago, IL 60601
> (312) 849-8100
> (312) 849-3960 (fax)
>
> *Attorneys and Trial Counsel for Defendant ARS National Services, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 7, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Donald A. Yarbrough, Esq.
> 2000 E. Oakland Park Blvd., Suite 105
> P.O. Box 11842
> Fort Lauderdale, FL 33339
> don@donyarbrough.com
> *Attorneys for Plaintiff*
>
> Jennifer M Spiegel Colson
> P.O. Box 50028
> Lighthouse Point, FL 33064
> jcolson@jennifercolsonpa.com
> *Attorneys for Plaintiff*

                                */s/Nancy A. Beyer Benton*
                                Nancy A. Beyer Benton

44766946_1