UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-81044-Civ-Marra/Hopkins

| | |
|---|---|
| BERNADETTE M. HELMUTH, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ARS NATIONAL SERVICES, INC., | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

Defendant ARS National Services, Inc. ("ARS"), by its undersigned counsel, in

opposition to plaintiff's Motion for Class Certification (Dkt. 86), states as follows:[1]

**FACTS**

Plaintiff financed a new computer system through Dell Financial Services and then failed

to pay, leaving behind an unpaid balance of over $2300.  Eventually, Dell placed the account for

collection with ARS, a collection agency located in Escondido, California.  (Montenaro Decl.,

para. 2.)  On April 1, 2010, ARS sent plaintiff an initial demand letter wherein, among other

things, ARS clearly identified itself as a debt collector ("**THIS COMMUNICATION IS

FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY

INFORMATION WILL BE USED FOR THAT PURPOSE.**").[2] (Montenaro Decl., para. 3

---

[1] The Helmuth Deposition, the Montenaro Declaration, and the Montenaro Deposition referenced herein are attached as Exhibits A, B and C, respectively.

[2] This disclosure, referred to as the "mini-Miranda," is required in the debt collector's initial communication (whether written or oral) with the debtor.  *See* 15 U.S.C. §1692e(11).

and Exhibit 2 thereto.)  ARS thereafter made several attempts to contact plaintiff by telephone over the next several months, without success, leaving several messages in the process. (Montenaro Decl., para. 4.)  ARS discontinued collection efforts in March 2011, after Dell recalled the account.  (Montenaro Decl., para. 5.)  At no time did plaintiff ever dispute the debt with Dell or with ARS (Montenaro Decl., para. 7); rather, she simply stopped making payments.[3]

Plaintiff then filed this putative class action lawsuit, alleging that ARS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*., when it allegedly left the following pre-recorded telephone message on September 15, 2010: [4]

> Hello.  This is a message from ARS National Services.  It is very important that we speak to Bernadette Helmuth.  This is not a telemarketing or sales call.  Please have them call us toll-free at 1-866-274-3582 and the reference number is 19718288.  We need to be able to discuss this matter with you as soon as possible. Thank you.  Goodbye.

(Dkt. 4, First Amended Class Action Complaint, para. 10.)

According to plaintiff, this alleged message violated the FDCPA's prohibition on "the placement of telephone calls without meaningful disclosure of the caller's identity" as well as a corollary prohibition on failing to disclose "that the communication is from a debt collector." *See* 15 U.S.C. §§1692d, e(11).  Plaintiff makes this claim even though the alleged message

---

Subsequent communications, such as the alleged telephone message at issue here, need only disclose that "the communication is from a debt collector."  *Id*.

[3] Plaintiff testified that she financed the purchase of a computer through Dell Financial Services, made some initial payments, and then refused to pay any further.  Plaintiff excused her decision to discontinue paying by claiming that the computer "stopped working" shortly after the warranty expired, but admits that she did not speak to Dell about it or seek to repair the computer. She also claimed that her finances prevented her from making further payments or seeking to repair the computer, but this did not prevent her from buying a new computer. (Helmuth Dep., 22:10-23:23; 24:9-15; 26:4-6; 26:15-18; 30:5-18; 35:4-36:11.)

[4] ARS has no record of making a call to or leaving a message for plaintiff on September 15, 2010.  (Montenaro Decl., para. 5.)

clearly identifies ARS as the caller, states that it is "not a telemarketing or sales call," and followed upon the earlier letter wherein ARS identified itself as a debt collector.  Moreover, ARS had left or attempted to leave messages for plaintiff on 18 different occasions *prior* to the alleged September 15, 2010 message at issue here, including several occasions where she hung up on ARS.  (Montenaro Decl., para. 4.)  ARS was no stranger to plaintiff.  Interestingly, plaintiff ignored ARS for months, but on September 13, 2011, six months after ARS had discontinued further collection efforts, nearly a year after the allegedly offending message, and only two days before she filed this lawsuit, plaintiff called ARS out of the blue, claiming that her husband had given her a message to call. She was referred back to Dell.  (Montenaro Decl., paras. 5-6.)

Finally, plaintiff's own testimony confirms that she understood the message to be from a debt collector – she testified that after listening to the September 15, 2010 message, she asked her friend "Buzz" for an attorney reference, because she was "getting phone messages from [a] collection agent" and "had someone calling me about a debt."  (Helmuth Dep., 45:7-49:21; 51:20-52:2.)  Buzz referred her to Atty. Yarbrough.  (*Id*.)  Plaintiff later tried to backpedal on this sequence of events, suggesting that her conversation with "Buzz" did not occur until after she talked to ARS (and that she did not understand ARS to be a debt collector until that time), but her call to ARS took place on September 13, 20<u>11</u>, nearly a year *after* the alleged September 15, 2010 message (and only two days before she filed this class action lawsuit). (Helmuth Dep., 60:19-63:1; 65:24-68:11; *see also* Montenaro Decl., para. 6.)  Her shifting and inconsistent testimony in this regard is suspect, to say the least.

Plaintiff does not claim that she, or any of the putative class members, have actually been harmed or that she or the class are entitled to actual damages; rather, she asks this Court to

impose liability on ARS and award statutory damages, attorney's fees and costs, solely because

the alleged message did not use the actual words "debt" or "debt collector."  Plaintiff seeks to

certify a class of Florida consumers who received a pre-recorded telephone message from ARS

in connection with seeking to collect a debt owed to Dell Financial Services, in which ARS

allegedly failed to disclose that the message was from a debt collector, during the period

September 15, 2010 (one-year prior to the filing of the complaint) through August 19, 2011

(when ARS adopted a standardized, uniform message for consumer communications that is not

being challenged here).  For the reasons set forth below, plaintiff's motion should be denied.[5]

## ARGUMENT

Class actions are "an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2550 (2011) (internal citation omitted).  "In order to justify a departure from that rule, a class

representative must . . . possess the same interest and suffer the same injury as the class

members."  *Id*. (marks and citation omitted).  All federal class action plaintiffs must demonstrate

numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

These requirements "effectively limit the class claims to those fairly encompassed by the named

plaintiff's claims."  *Dukes*, 131 S. Ct. at 2550 (internal quotations omitted).  Because the plaintiff

seeks certification under Rule 23(b)(3), she also must establish predominance of common

questions and that a class action is the superior method of adjudication.  *Id*. at 2549 n.2.

---

[5] Earlier today, ARS filed its opposition (Dkt. 101) to plaintiff's motion for partial summary
judgment (Dkt. 94). For the reasons set forth at pp. 4-5 of that opposition, ARS respectfully
requests that the court defer any ruling on the motion for partial summary judgment until after
the court rules on the class certification motion and, further, if a class is certified, until after class
notice has been provided and the opt-out period has expired. *See London v. Wal-Mart Stores,
Inc.*, 340 F.3d 1246, 1252-1253 (11th Cir. Fla. 2003) (explaining purpose of the "one-way
intervention" rule).

In deciding whether a plaintiff has met her burden, the court must rigorously analyze the class proposal. *Id*. at 2551. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate her compliance with the Rule—that is, she must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original); *see also O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 482 (S.D. Fla. 2006). Failure to meet any one of Rule 23(a) or 23(b)'s requirements will preclude certification.

In the instant case, class certification must be denied, principally because it will be impossible to determine which, if any, of the 5,565 putative class members received the same prerecorded message that the plaintiff claims to have received, without doing an account-by-account review to determine (1) whether a call recording was ever made, (2) if so, whether it still exists, and (3) whether it contains the same message that the plaintiff claims to have received. Moreover, the court would then have to undertake a separate analysis of each message that differs from the one at issue here. As such, individual questions of fact and law clearly predominate and make this case ill-suited for class treatment.

In addition, given the circumstances and the disputes of fact surrounding plaintiff's claim, including whether she can even establish in an admissible fashion that she received the message in question, her claim is hardly typical of the claims of the putative class members, which also gives rise to problems with commonality and adequacy.

Finally, the Florida-only/Dell-only class being proposed here is already subsumed within a putative nationwide class in *Koby v. ARS National Services, Inc.*, pending since 2009 in the Southern District of California, which involves similar "voicemail messaging" claims.[6] The

---

[6] *Koby, et al. v. ARS National Services, Inc.*, Case No. 3:09-cv-00780-KSC (S.D.Cal.).

parties there, working under the supervision and guidance of Magistrate Karen Crawford, have

already reached an agreement in principal to certify a nationwide settlement class, which would

include the putative class members in this case.  The settlement documentation is being finalized

and the parties are due to appear before Judge Crawford on January 30, 2013 to resolve any

remaining issues.  It makes little sense, from the standpoint of judicial economy, to certify the

narrowly-defined class proposed here when the parties in *Koby* are on the verge of a nationwide

settlement class that will include the plaintiff and the putative class members here and bring

finality to these matters.[7]  Plaintiff will be free, however, to continue this litigation in her

individual capacity because the *Koby* settlement specifically reserves to the class members the

right to bring or maintain *individual* claims for actual and statutory damages.

## I.   PLAINTIFF HAS NOT DEMONSTRATED THAT COMMON QUESTIONS WILL PREDOMINATE OVER INDIVIDUALIZED QUESTIONS.

Since the Supreme Court's opinion in *Dukes*, 131 S. Ct. 2541, it is not enough to raise

common questions or common issues, because "[a]fter *[Dukes],* Rule 23(a)(2)'s commonality

requirement demands more than the presentation of questions that are common to the class

because any competently crafted class complaint literally raises common questions." *M.D. v.*

*Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (internal quotation omitted).  Instead, a plaintiff must

show "that a classwide proceeding [will] generate *common answers* apt to drive the resolution of

the litigation." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672 (S.D. Fla. 2012) (*citing*

*Dukes*, 131 S. Ct. at 2551).  Those common answers require common evidence.  *See e.g. In re*

*Fla. Cement & Concrete Antitrust Litig.*, No. 09-23187, 2012 U.S. Dist. LEXIS 281, at *40 (S.D.

Fla. Jan. 3, 2012).  As a result, the Court must focus on the *dissimilarities* that exist among the

---

[7] Rule 23 provides that, in determining whether to certify a class, the court may consider "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).

proposed class. *Dukes*, 131 S. Ct. at 2551 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."). Among other things, the predominance inquiry requires the court to envision how the case will actually be tried. *Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 556-57 (5th Cir. 2011).

### A. Individual Questions Predominate as to the Content of the Messages.

Here, all plaintiff has established thus far is that there are 5,565 Florida residents that received a prerecorded voicemail message from ARS in connection with a Dell account. What plaintiff has failed to establish is whether all of those voicemail messages were the same as the one she allegedly received on September 15, 2010, *i.e.*, suffered from the same alleged failure to disclose that ARS was a debt collector. Indeed, because the messages are only maintained, if at all, as call recordings on an account level, it would require an account-by-account review of all 5,565 files to determine (1) whether a call recording was ever made, (2) if so, whether it still exists, and (3) whether it contains the same message that the plaintiff claims to have received. Moreover, the trier of fact would then have to undertake a separate analysis of each message that differs from the one at issue here, to determine whether it complies with Sections 1692d and e(11).

ARS's policy and practice on messages and other communications with consumers has always been to comply with and adhere to the FDCPA and all other applicable federal and state laws governing communications with consumers. Effective August 19, 2011, ARS adopted a standardized, uniform message for communications with debtors which, among other things, uses the actual phrase "debt collection," as part of an ongoing and continuing effort to improve communications and more effectively deliver the message. (Montenaro Dep., 19:6-19; 36:12-20; 37:7-39:7; 140:16-142:2; 168:5-169:7; 172:10-16; 173:9-174:3; 203:7-207:15.)

Prior to August 19, 2011, however, ARS did not have a "uniform" prerecorded message for consumers. While some of the pre-August 19, 2011 messages, like the one allegedly left for plaintiff on September 15, 2010, may not have included the exact words "debt" or "debt collector," it is impossible to determine the exact content of the pre-August 19, 2011 messages because they were maintained on an account level, meaning that ARS would have to review each account on case-by-case basis to see what call recordings still existed. (Montenaro Dep., 183:17-184:20.) Even that might not help, because it was not until sometime in mid-2011 that ARS was in a 100% call recording environment. (Montenaro Dep., 54:19-56:12; 183:4-7.)

ARS denies that its pre-August 19, 2011 messages failed to disclose that ARS was a debt collector. (Montenaro Dep., 19:6-19; 36:12-20; 37:7-39:7; 140:16-142:2; 168:5-169:7; 172:10-16; 173:9-174:3; 203:7-207:15.) ARS believes that regardless of the exact terminology used, the messages effectively conveyed that ARS was a debt collector. (Montenaro Dep., 173:9-178:12.) But, again, even if these other messages could be ascertained, the trier of fact would have to review each of the different iterations of the message to see if it satisfied the requirements of Sections 1692d and e(11).

Here, trying this case as a class action would require an account-by-account review of all 5,565 files. As such, the case is not suitable for class treatment and plaintiff's motion must be denied.

### B.  Individual Issues Predominate on the Circumstances Surrounding the Message.

Section 1692d prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. §1692d. Section 1692e(11) likewise prohibits "the failure to disclose . . . that the communication is from a debt collector." 15 U.S.C. §1692e(11). Neither of these sections proscribe exactly how the debt collector is to make those disclosures, nor does

8

either section require, as plaintiff would have it, that the debt collector use some magic phrase or combination of words.  Rather, the court should consider all of the circumstances to determine whether the hypothetical "least sophisticated" consumer would understand the message to be from a debt collector.  In that regard, the court may assume that even the least sophisticated consumer will "possess a rudimentary amount of information about the world" and will not make "unreasonable misinterpretations."  *Rivera v. Amalgamated Debt Collection Servs.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) (quotations omitted).

In this case, ARS clearly and truthfully identified itself *by name* in the message allegedly left for plaintiff. That is all that is required by Section 1692d, which provides that debt collectors must make a "meaningful disclosure of the caller's *identity.*" (Emphasis added.)   Here, plaintiff here does not even have a claim under Section 1692d, much less a claim that is typical of the putative class members.

According to plaintiff, in order to satisfy Section 1692e(11), the message needs to include the words "debt" or "debt collector," but Section 1692e(11) does not require such a rigidly formulaic message. *Reed v. Global Acceptance Credit Co.,* No. 08-01826, 2008 U.S. Dist. LEXIS 61738, *8-9 (N.D. Cal. 2008) (finding material issue of fact about whether follow-up voicemail messages adequately disclosed that they were from a debt collector); *Epps v. Etan Industries, Inc.,* No. 97-8770, 1998 U.S. Dist. LEXIS 19120, at *28 (N.D. Ill. 1998) (overall content of letter was sufficient to show that it was from a debt collector); *Ross v. Commercial Fin. Servs., Inc.,* 31 F.Supp.2d 1077, 1079-80 (N.D. Ill.1999) (same).

In *Reed*, the court denied summary judgment for the plaintiff on his Section 1692e(11) claim, finding that there was a material issue of fact as to whether the defendant had adequately disclosed that it was a debt collector.  *Reed*, 2008 U.S. Dist. LEXIS 61738, at *8-9.  There, the

defendants sent collection letters to plaintiff and later left several voicemail messages.  Reed

alleged that the defendants failed to disclose in the messages that the communications were from

a debt collector in violation of  Section 1692e(11).  However, in the voicemails, defendants

identified themselves immediately and truthfully as Global Acceptance Credit Company.  The

court found that "given the totality of the circumstances, it is very possible that even the least

sophisticated consumer would have known that Global Acceptance Credit Company was a debt

collector. Not only does the defendants' company name suggest that it could be a debt collector,

but *the totality of the circumstances and prior communications between the parties suggest that a*

*consumer would know the nature and identity of the caller in the voice mail messages.*"  *Reed*,

2008 U.S. Dist. LEXIS 61738, at \*12 (emphasis added).  *See also Beeders v. Gulf Coast*

*Collection Bureau*, 796 F. Supp.2d 1335, 1340-1341 (M.D. Fla. 2011) (finding that "a 'least

sophisticated consumer' could determine that the name "Gulf Coast Collection Bureau," in the

context of the message as a whole, is sufficient to inform the recipient that the caller is a debt

collector"); *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 669-70 (S.D.N.Y. 2006) (noting that that

a debt collector could satisfy Section 1692e(11) without the verbatim use of the term "debt

collector").

     In this case, prior to receiving the alleged message, plaintiff received a letter from ARS in

which ARS clearly identified itself as a "debt collector."  **("THIS COMMUNICATION IS**

**FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY**

**INFORMATION WILL BE USED FOR THAT PURPOSE.")**   (Montenaro Decl., para. 3.)

In the message that followed, ARS identified itself by the same name that it used in the

collection letter.  As such, it is likely that even the "least sophisticated" consumer would, under

the totality of the circumstances, understand that the "ARS" leaving the message was the same

"ARS" that sent the earlier debt collection letter.  The message goes on to advise that "This is not a telemarketing or sales call" which further serves to dispel any confusion.

Moreover, between the time of the initial April 1, 2010 collection letter and the alleged September 15, 2010 telephone message, ARS had left or attempted to leave messages for plaintiff on 18 different occasions, including several instances where plaintiff hung up on ARS.[8] ARS was no stranger to plaintiff.  Interestingly, plaintiff ignored ARS for months, but on September 13, 2011, six months after ARS had discontinued collection efforts, nearly a year after the allegedly offending message, and only two days before she filed this lawsuit, plaintiff called ARS out of the blue, claiming that her husband had given her a message to call. She was referred back to Dell. (Montenaro Decl., paras. 5-6.)

Finally, plaintiff's own testimony confirms that she understood the message to be from a debt collector – she testified that after listening to the September 15, 2010 message, she asked her friend "Buzz" for an attorney reference, because she was "getting phone messages from [a] collection agent" and "had someone calling me about a debt."  (Helmuth Dep., 45:7-49:21; 51:20-52:2.)  Buzz referred her to Atty. Yarbrough.  (*Id*.)  Plaintiff later tried to backpedal on this sequence of events, suggesting that her conversation with "Buzz" did not occur until after she talked to ARS (and that she did not understand ARS to be a debt collector until that time), but her call to ARS took place on September 13, 20<u>11</u>, nearly a year *after* the alleged September 15, 2010 message (and only two days before she filed this class action lawsuit). (Helmuth Dep., 60:19-63:1; 65:24-68:11; *see also* Montenaro Decl., para. 6.)

After all this, it is just not credible for plaintiff to claim that she did not recognize ARS as a debt collector in the alleged September 15, 2010 message.  Not only do these questions of fact

---

[8] None of these earlier messages or call attempts are actionable as they all fall outside of the FDCPA's one-year statute of limitations.  15 U.S.C. §1692k(d).

and credibility surrounding her claim make it atypical, but they serve to underscore the point that

individual questions predominate here.  Defendant would be entitled to conduct the same

investigation into and analysis of the circumstances surrounding the message(s) left for each of

the putative class members.

Plaintiff relies upon *Drossin v. National Action Financial Services, Inc.*, 641 F.Supp.2d

1314 (S.D. Fla. 2009), but that case is distinguishable. There, the messages at issue were

intended for a different person with the same last name and were instead left for the plaintiff by

mistake.  As such, it is not clear whether the plaintiff in *Drossin*, who was not the intended

recipient of the messages, would have received, as plaintiff did here, an earlier letter identifying

the defendant as a debt collector or the multiple previous telephone contacts. Another case relied

upon by plaintiff, *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1351 (11th Cir.

2009), is likewise distinguishable because the defendant there purposefully left out of the

messages any disclosure of its name.[9]

## II.      PLAINTIFF CANNOT DEMONSTRATE COMMONALITY, TYPICALITY OR ADEQUACY.

As is evident from the discussion above, plaintiff has failed to meet the requirement of

Rule 23(a)(2) – commonality.  She additionally has failed to establish that she meets the

---

[9] Plaintiff makes no mention, of course, of the tightrope that debt collectors have to walk in complying with Section 1692e(11) while, at the same time, avoiding a potential "third-party disclosure" violation under Section 1692c(b) which (with a few exceptions) prohibits a debt collector from communicating with third-parties regarding the debt.  A debt collector can never know for certain who, besides the intended recipient, might listen to the message, *e.g.*, a housemate, a child, a friend, etc., which could result in a Section 1692c(b) violation if the message is too explicit.  In this case, however, a third-party who listened to the message without the benefit of having received the earlier debt collection letter would have no basis to think that the message involved debt collection.  Only the actual debtor, who *had* received the letter, would make that connection.  The message thus serves the purposes of both Section 1692e(11) and Section 1692c(b).

requirements of Rule 23(a)(3) and (4) – typicality and adequacy, which often overlap.  *O'Neill*, 243 F.R.D. at 478.   The typicality requirement deserves more than just perfunctory analysis:

> A class is disserved if its representative's claim is not typical of the claims of the class members, for then if his claim fails, though claims of other class members may be valid, the suit will at the least be delayed by the scramble to find a new class representative. Alternatively, a class representative's atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch.

*CE Design Ltd. v. King Architectural Metals, Inc.* 637 F.3d 721, 724 (7th Cir. 2011).

Rule 23(a)(4) requires further requires plaintiff to demonstrate the she will be an adequate representatives of the class.  The purpose of an "adequacy of representation" requirement is to protect the legal rights of absent class members and to uncover conflicts of interest between named parties and the class.  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).  Courts determining whether there is adequacy of representation consider (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  A class representative must be part of the class, possess the same interest, and suffer the same injury as the class members.  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  Plaintiff bears the burden of establishing adequacy of representation.  *Valley Drug*, 350 F.3d at 1187.

Here, plaintiff's claim is atypical for the reasons set forth above – the facts surrounding her message include an earlier letter from ARS identifying itself as a debt collector, as many as 18 previous phone attempts or contacts by ARS, and an admission (or, at least, inconsistent testimony) that she did, in fact, recognize the message to be from a debt collector.

On top of that, plaintiff faces unique problems with the admissibility of her evidence. Her entire case rests upon an unauthenticated and, thus, inadmissible voicemail message allegedly

13

left by ARS.  While she claims to be in possession of a recording, she has never produced it,

neither to ARS nor in support of her class certification motion. Instead, she proffers a mere

declaration, in which she recites what she claims to be the message that she received from ARS

"on or about September 15, 2010."  (Dkt. 88, Declaration of Bernadette Helmuth, paras. 3-4.)[10]

That declaration is inadmissible hearsay and must be disregarded.

The evidentiary burden on summary judgment is no different than at trial.  Fed. R. Civ. P.

56(c)(4) (to support of a motion for summary judgment, affidavits or declarations must be "made

on personal knowledge [and] set out facts that would be admissible in evidence.").  Plaintiff may

only rely upon admissible evidence, for which a proper foundation has been laid.  *See Club Car,*

*Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783-84 (11th Cir. 2004) ("[i]nadmissible

hearsay generally cannot be considered on a motion for summary judgment"); *Streeter v. City of*

*Pensacola*, No. 11-14195, 2012 U.S. App. LEXIS 25449, at*3 (11th Cir. Fla. Dec. 13, 2012)

("the general rule is that hearsay cannot be considered on a motion for summary judgment unless

such statements can be reduced to admissible evidence at trial.").  To be admissible, such

evidence must be authenticated.  *Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. 110, 113

(11th Cir. 2010).  Evidence that is not property authenticated is not considered by the court.  *Id.*

(finding that the district court did not abuse its discretion by striking exhibits that were not

properly authenticated).

In order to authenticate evidence, the plaintiff "must produce evidence sufficient to

support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.

---

[10] Plaintiff's inability to state the exact date and time of the alleged message further undermines her effort to authenticate it.  Plaintiff has no independent recollection of when she received the alleged message, nor any independent recollection of what it said other than "There was some important message for Bernadette Helmuth and to contact a number." (Helmuth Dep., 37:3-12; 41:19-23.)  Moreover, ARS' records do not reflect any call to or message left for plaintiff on September 15, 2010.  (Montenaro Decl., para. 5.)

Specifically, in order to authenticate a recording, including a voicemail, the plaintiff must generally show that (1) the recording device was capable of recording the conversation; (2) the operator was competent to operate the machine; (3) the recording is a correct rendition of the occurrence; (4) no changes, additions or deletions have been made; (5) the recording has been preserved in a manner shown to the court; (6) the speakers are identified; and (7) there was no impermissible inducement. *United States v. Branch*, 970 F.2d 1368 (4th Cir. 1992) (articulating factors that provide guidance to the district court when called upon to make rulings on authentication of recordings).

For these reasons, paragraphs 3-4 of plaintiff's declaration are inadmissible hearsay and must be disregarded. *Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. at 113. As a result, plaintiff will need to focus her attention and resources on attempting to save her own claim (*see Nicholas v. Nationwide Credit, Inc.*, No. 09-60736, 2010 U.S. Dist. LEXIS 10442, at *9, S.D. Fla. Feb. 8, 2010, denying summary judgment where there was "a genuine issue over the authenticity and substance of the audio recordings") to the detriment of protecting the interests of the class. That makes her claim atypical and also renders her an inadequate class representative.

## III. THE COURT SHOULD DECLINE TO CERTIFY THE NARROW CLASS PROPOSED HERE WHERE A NATIONWIDE CLASS SETTLEMENT IS PENDING IN CALIFORNIA.

The "Florida-only/Dell-only" class being proposed here is already subsumed within a putative nationwide class in *Koby v. ARS National Services, Inc.*, pending since 2009 in the Southern District of California, which involves similar "voicemail messaging" claims.[11] The parties there, working under the supervision and guidance of Magistrate Karen Crawford, have already reached an agreement in principal to certify a nationwide settlement class, which would include the putative class members in this case. The settlement documentation is being finalized

---

[11] *Koby, et al. v. ARS National Services, Inc.*, Case No. 3:09-cv-00780-KSC (S.D. Cal.).

15

and the parties are due to appear before Judge Crawford on January 30, 2013 to resolve any

remaining issues. The main terms of the proposed *Koby* settlement are as follows:

- Even though the FDCPA does not provide for injunctive relief to private litigants, see *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982), the *Koby* settlement includes an injunction requiring ARS to keep the current post-August 19, 2011 message in place for a minimum of two years from the date of final judgment;

- *Koby* will be certified as a Rule 23(b)(2) rather than a Rule 23(b)(3) class, but the settlement specifically reserves to the class members the right to bring or maintain *individual* claims for actual and/or statutory damages based on the Section 1692d and e(11) claims; it only bars further class actions. Thus, plaintiff will be free to continue this litigation in her individual capacity.

- The FDCPA provides that, in a class action, a defendant can be liable for statutory damages in an amount equal to the lesser of $500,000 or one-percent (1%) of its net worth. 15 U.S.C. §1692k(a)(2)(B). In *Koby*, ARS has agreed to pay $35,000 (representing one-percent of ARS's net worth averaged over the last four years) in class statutory damages; because that sum cannot be distributed on a nationwide basis in any meaningful or effective manner, the money will be distributed on a *cy pres* basis to a mutually acceptable organization.  As noted above, the *Koby* class members (including plaintiff and the putative class members in the instant case) retain the right to bring individual claims and seek up to $1000 in

statutory damages, *see* 15 U.S.C. 1692k(a)(2)(A), far more than what they would receive as their *pro rata* share of any class award here.

- Payment of reasonable attorney's fees and costs, as approved by the court.

Rule 23(b)(3) provides that, in determining whether certifying a class is the superior method of adjudication, the court may consider "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). "This factor is intended to serve the purpose of *assuring judicial economy and reducing the possibility of multiple lawsuits*." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (emphasis added) (*citing* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1780 at 568-70 (2d ed. 1986)). It makes little sense, from the standpoint of judicial economy or avoiding duplicative litigation, to certify the narrowly-defined class proposed here when the parties in *Koby* on are the verge of a *nationwide* settlement that will include the plaintiff and the putative class members here and bring finality to these matters.

Moreover, even if it could be argued that a class action would be superior to individual actions, the class should not be certified if it is inferior to the *Koby* class settlement. *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191 (4th Cir. 2006) (district court abused its discretion by failing to analyze whether a class action was superior to the prior filed adversary proceeding against defendant where Rule 23(b)(3)(B) advises courts to consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 107 (10th Cir. 1971) (affirming denial of class certification where other lawsuits had previously been filed against defendants, two class

17

actions had been certified, and tedious and time consuming discovery had taken place as part of those actions).

Here, the proposed *Koby* settlement is far superior than anything plaintiff could accomplish in this case. The *Koby* settlement provides, by agreement, for *injunctive relief*, which would not be available if this case were to proceed to judgment.  *Koby* also provides that ARS pays (and, importantly, pays only once), the *maximum* statutory damages available under the FDCPA, whereas plaintiff here will have to try that issue to the jury, with uncertain results.[12] Finally, the *Koby* settlement specifically reserves to the class members the right to bring or maintain *individual* claims for actual and/or statutory damages based on the Section 1692d and e(11) claims; the settlement only bars bringing class actions.[13] Thus, plaintiff will be free to continue this litigation in her individual capacity.

Courts often point out that FDCPA is a remedial statute.  *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1213 (M.D. Fla. 2009). That remedial purpose has been served by the *Koby* settlement.  There is simply nothing more to be accomplished by allowing this case to proceed as a class action, other than to increase the fees and costs on both sides and waste judicial resources.[14] The motion for class certification should be denied.

---

[12] *See* Plaintiff's Motion for Partial Summary Judgment (Dkt. 94, p. 1), where she "leaves the matter of statutory damages to the jury."

[13] Indeed, the prohibition on bringing class actions is *all* that ARS is getting from the *Koby* settlement, which leaves ARS exposed to an untold number of individual lawsuits.  ARS simply wants to buy peace from multiple class action lawsuits.

[14] Indeed, this case would in all likelihood settle, as plaintiff is not claiming actual damages, leaving only $1000 in statutory damages and attorney's fees and costs at issue.

## CONCLUSION

WHEREFORE, for the reasons set forth above, ARS respectfully requests that the Court

deny plaintiff's Motion for Class Certification, and enter such further relief as this Court deems

just, necessary and proper.

Dated: January 7, 2013

/s/ Nancy A. Beyer Benton
Nancy A. Beyer Benton (FL Bar No. 0059688)
nbeyer@mcguirewoods.com
McGUIREWOODS LLP
50 North Laura Street, Ste. 3300
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (fax)

David L. Hartsell (admitted *pro hac vice*)
dhartsell@mcguirewoods.com
McGUIREWOODS LLP
77 West Wacker Dr., Ste. 4100
Chicago, IL 60601
(312) 849-8100
(312) 849-3960 (fax)

*Attorneys and Trial Counsel for Defendant ARS National Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Donald A. Yarbrough, Esq.
2000 E. Oakland Park Blvd., Suite 105
P.O. Box 11842
Fort Lauderdale, FL 33339
don@donyarbrough.com
*Attorneys for Plaintiff*

<u>*/s/Nancy A. Beyer Benton*</u>
Nancy A. Beyer Benton